ADA S. HORTON ET AL. v. JOHN S. JONES ET AL.

(Filed 16 December, 1914.)

**1. Partition—Title.**

It is held, under the evidence in this action, involving the disputed title to lands, that the plaintiff's contentions that the land was allotted to the one under whom he claims in proceedings for partition in 1835 were clearly and properly submitted to the jury upon a proper issue.

**2. Limitations of Actions — Adverse Possession — Color—Trials—Questions for Jury.**

Evidence of adverse possession to ripen title to lands under color is sufficient to be submitted to the jury which tends to prove actual possession for the statutory period by one claiming the title in his own right, and that he has made such use of the land as its condition rendered capable of, with acts of ownership so repeated as to show they were committed in his character as owner, in opposition to the right or claim of any other person, and not as an occasional trespasser; and the charge of the court under the evidence of this case is not objectionable on the ground that the evidence of plaintiff's adverse possession was insufficient to authorize it.

3. Judicial Sale—Commissioner's Deed—Judgments—Estoppel.

A deed made by a commissioner appointed in proceedings to sell lands of a decedent to pay his debts can only convey so much of the lands as are embraced in the description set out in the petition, and authorized by the order of sale, and being inoperative as to other lands therein attempted to be conveyed, a decree of confirmation of the report of sale made in general terms, so far as the lands sold are described, referring to the petition and decree of sale, cannot operate as an estoppel by judgment so as to bar the claim of the heirs at law to the lands not authorized, but included in the commissioner's deed, though they were parties to the proceedings to sell the lands.

4. Same—Trials—Evidence—Questions for Jury.

In this action, involving title to lands, the plaintiff's claim by adverse possession under color is made to depend upon whether the lands were included in an exception of lands in a junior grant from those granted in a senior grant, and by way of estoppel the defendant sets up that in 1855 these lands were sold as being contained in the junior grant under an order of a court of equity to pay the debts of the original owner, and that those under whom the plaintiff claims were parties to these proceedings as his heirs at law. The petition for sale describes the land in accordance with the description contained in the junior grant, the order of sale conformed therewith, but the deed of the commissioner to sell nevertheless included the *locus in quo*. The decree of sale generally referred to the description in the junior grant and the order of sale confirming it, and it is held that it is for the jury to determine whether the *locus in quo* was embraced in the lands covered by the exception in the junior grant, the deed of the commissioner being invalid to pass title to more lands than those described in the petition and order of sale, and the decree therefore and to that extent being inoperative to estop the plaintiff.

5. Excessive Judgments — Lands in Controversy — Pleadings—Appeal and Error.

The lands in this controversy admittedly being those embraced within certain boundaries as shown on a map thereof, and the judgment of the court having included more lands than described in the pleadings, and which were not in controversy, the judgment is accordingly modified and costs of appeal taxed equally upon the appellant and appellee.

APPEAL by defendants from. *Long, J.,* at May Term, 1914, of CALDWELL.

Civil action to try title to land, tried upon these issues:

1. Are the plaintiffs the owners of the land described on the map and indicated by the figures 1, 2, 3, and 4, as alleged in the complaint? Answer: "Yes."

2. Are the plaintiffs estopped from maintaining this action against the defendants? Answer: "No."

3. Is the plaintiffs' cause of action barred by the statute of limitation? Answer: "No."

From the judgment rendered, the defendants appealed.

*Squires & Whisnant, S. J. Erwin, W. C. Newland for plaintiffs.*
*Edmund Jones for defendants.*

BROWN, J.  The *locus in quo* is represented on the ·official map attached to the judgment by the figures 1, 2, 3, 4, and was originally owned by William Dula, under whom all parties claim.  There does not seem to be any real dispute as to the location of the land in controversy nor of the lands described in the plaintiffs' as well as the defendants' deeds. The real matters in issue appear to be as to whether the plaintiffs have shown evidence of title of the *locus in quo,* and if so, are they estopped to assert such title?

1. The plaintiffs undertake to show title under a partition proceeding had in 1835 among the heirs of William Dula.  The plaintiffs are the descendants of Sarah Dula (William Dula's daughter) and her husband, David E. Horton.  The defendants are the descendants of Nancy Dula (sister of said Sarah Horton) and of her husband, Catlett Jones.

This land was granted to William Dula by Grant No. 3200, dated 22 December, 1819, and lies on north side of the Yadkin River.  All this land was divided in 1835, and the evidence tends to prove that to Sarah Horton was allotted a part of the land which includes the land in controversy.  This contention was clearly and correctly submitted to the jury under the first issue along with the other claim of title by the plaintiffs.

2. David E. Horton and wife, Sarah, conveyed certain lands by deed of 12 October, 1866, to James T. Horton, under whom the plaintiffs claim.  This deed, it is contended, includes the land in dispute.  The plaintiffs claim under this as color of title, and offer evidence of possession necessary to mature title under it.

His Honor charged: "If the jury find from the evidence that the plaintiffs and those under whom they claim entered into possession of the lands described in the deed from David E. Horton and wife, Sarah Horton, to James T. Horton, deed dated 12 October, 1866, and they further find that said deed includes within its lines and boundaries the lands in controversy, designated on the map between the figures 1, 2, 3, and 4, and that the said James T. Horton erected a still-house on said premises about the year 1870 or 1871, and planted a turnip patch, and that he maintained said still-house on said premises and used the same for a period of over seven years, claiming said land adversely; and if you find they have the sole and exclusive possession of said land in controversy, then the court instructs you that such possession so taken and held by the said James T. Horton would give him, and the plaintiffs herein claiming under him, a good title to all the land in controversy; and in this case it would be your duty to answer the first issue 'Yes.'"

It is contended that the charge is not warranted by the evidence.  We

think there is ample evidence to sustain the claim of adverse possession, or at least to warrant the jury in finding it. Such evidence is sufficient to carry the case to the jury, when it tends to prove actual possession for the statutory period by one claiming the title in his own right, and that he had made such use of the land as it was capable of in its present condition, with acts of ownership so repeated as to show they were committed in his character as owner, in opposition to the right or claim of any other person and not merely as an occasional trespasser. *Locklear v. Savage,* 159 N. C., 236, and cases cited.

It is claimed that the plaintiffs are estopped to assert their title. This contention was submitted to the jury under the second issue.

On 9 December, 1835, a grant was issued to William Dula, No. 3789, which covers a strip of land about 75 poles by 75 of the northwest corner of Grant No. 3200, thus lapping over on that senior grant. Grant No. 3789 contains these words, "including 100 acres previously granted, which is excepted in this grant."

In 1855 the heirs at law of William Dula filed a petition in the court of equity of Wilkes County for the sale of the lands of William Dula therein described to pay debts. The 400-acre tract is described therein, but the description contains these words, viz.: "including 100 acres previously granted, which is excepted in this grant, as will appear by Grant to William Dula, No. 3798, dated 9 September, 1835, excepting also 75 poles west and 75 poles south on account of lappage on said William Dula's 100-acre tract on the head of the big branch, adjoining William B. Dula, Catlett Jones, and others."

It is contended by the plaintiffs that this exception embraces the land now in controversy. A decree of sale was entered. The clerk and master, James Calloway, was appointed commissioner to sell. The sale was duly made to C. P. Jones, under whom the defendants claim, sale confirmed and deed made to him.

It is admitted this deed covers the land in controversy. The notice of sale, the report of the sale by the clerk and master, and the decree of confirmation are in general terms so far as the lands sold are described, and all refer to the petition and decree of sale.

It is contended by the defendants that because of the presence of the ancestors of the plaintiffs in this equity proceeding, and because of the confirmation of the report of the commissioner and proceedings had in such cause, that the deed of the clerk and master conveys to them title to so much of the lands embraced within the Grant No. 3200 as are likewise embraced in the deed of the clerk and master to C. P. Jones.

The plaintiffs, on the other hand, contend that notwithstanding their presence in the suit, and while admitting that they are bound by the decrees that were rendered in such proceeding, that still C. P. Jones and

the defendants claiming under him have acquired no rights as against them, for the reason that the lands which are now the subject of controversy, and which are the only lands in controversy, were excepted, as they contend, out of the petition, and that as to them the court of equity of Wilkes County acquired no jurisdiction.

It being admitted that the commissioner's deed to Jones covers the land in controversy, the court, under the evidence in the case, very properly and clearly submitted the question to the jury as to whether the land in dispute was embraced within the exception, and thereby excepted from the petition, saying: "While the language of this exception in the petition is subject to doubt as to what is meant, as to whether it excepts the land referred to from the grant and from the petition, it is, nevertheless, left open to inquiry by the jury as to where the lands referred to in this description, "75 poles west and 75 poles south," and so on, is situated. It is also left open for the jury to inquire as to whether the lands referred to in this language are the identical lands now in suit.

Taking it to be established by the verdict that the land in controversy is excepted from the petition, we think the commissioner's deed, in so far as it undertook to convey land not embraced within the proceedings and decree of sale and confirmation, is void, in that the deed exceeds the power conferred on the commissioner.

Among cases of judicial sales that are void, Judge Freeman instances those "where the property was not described in the pleadings upon which the judgment or order was based." Void Judicial Sales, page 19, par. 4 A. Again: "A license to sell, granted without any petition therefor, is void." Par. 11, page 53. Again, at page 58: "The property sold must be described in the petition. No jurisdiction is obtained over that which is not described." To same effect is *Verry v. McClellan,* 6 Gray (Mass.), 535; *Colligan v. Cooney,* 107 Tenn., 214; *Wakefield v. Camel,* 37 Am. Dec., 60; *Falls v. Wright,* 55 Ark., 562; Black on Judgments, sec. 242 *et seq.*

It is contended that the judgment of *Judge Long* in this case includes possibly lands of the defendant not included in the action or described in the pleadings, and not in controversy. This exception is sustained.

The land in controversy in the action, as admitted by both parties, and as charged by the court, was the square embraced in the lines and corners as indicated by the figures 1, 2, 3, 4, as shown on the map.

The judgment will be modified accordingly so as to embrace no other. Let the cost of the Supreme Court be equally divided between the plaintiffs and the defendants.

Modified and affirmed.